## ENTRY ORDER

SUPREME COURT DOCKET NOS. 2014-329 & 2014-353

SEPTEMBER TERM, 2014

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Franklin Unit |
| | } | Criminal Division |
| Brian M. Thomes | } | |
| | } | DOCKET NO. 930-9-14 Frcr |
| | } | |
| | | Trial Judge: Alison S. Arms |

In the above-entitled cause, the Clerk will enter:

In this bail appeal, defendant challenges two conditions of pretrial release: (1) a requirement that he give a surety bond or cash of $10,000, and (2) a requirement that he be "released into the custody of a responsible adult approved by the court." Defendant argues that these conditions are not, as required by statute, the "least restrictive combination of . . . conditions which will reasonably assure the appearance of [defendant] as required" in court, 13 V.S.A. § 7554(a)(1), and "reasonably assure protection of the public," id. § 7554(a)(2). This Court affirms the responsible-adult condition, but reverses the $10,000 bail requirement on the current record, and remands to the trial court with instructions to strike that condition.

Brian Thomes is charged with two counts of aggravated assault on a law enforcement officer and one count of aggravated disorderly conduct. The affidavit of the arresting officer gives the following facts. In the early afternoon of September 5, 2014, two officers were dispatched to Thomes' home in St. Albans following a disturbance call, which reported that Thomes had cut his wrist in an attempt to harm himself, and that Thomes was threatening to kill his son. The officers arrived to find Thomes sitting in front of his home in a folding chair smoking. The officers saw a knife on the ground at Thomes' feet. As they exited their car, Thomes bent forward, extinguished his cigarette on the sidewalk, picked up a kitchen knife in one hand and a butcher's knife in the other, stood up, and began walking toward the officers with the knives in his hand in an upright position. Believing that Thomes might attack them, the officers drew their weapons and ordered him to drop the knives, but Thomes refused, saying that "he wasn't going to drop anything" and urging the officers to kill him. The officers shot Thomes with a stun gun, recovered the knives, and arrested Thomes, whose earlier self-inflicted wounds to his wrist were superficial. The officers interviewed two witnesses, including Thomes' son, who told police that his father had seen him earlier and told them "that he was going to kill himself and was going to come back from the dead to kill him." The information was filed the same day as the arrest, and Thomes was arraigned later that day.

At the arraignment, it was undisputed that Thomes was a fifty-four-year old longtime local resident with no prior criminal history. The court acknowledged the defendant's ties to the community, but found that Thomes' "current presentation" (i.e., his precarious mental state) and the serious facts alleged (i.e., that Thomes waved a knife threateningly at police officers in an apparent attempt to goad them to kill him) made him a flight risk. Accordingly, the court imposed conditions of release which included, alongside several conditions not at issue here, requirements that the defendant post $10,000 bail, and that, when a bed became available at the State Psychiatric Hospital, bail be automatically struck and the defendant, as recommended before the arraignment by a mental-health screener, submit to an inpatient forensic evaluation, and voluntarily admit himself if the evaluation called for it.[1]

Defendant was unable to meet the conditions of release, and on September 10, the trial court held a bail review hearing. See 13 V.S.A. § 7554(d)(1) ("A person for whom conditions of release are imposed and who is detained as a result of his or her inability to meet the conditions of release . . . shall, within 48 hours of application, be entitled to have the condition reviewed by a judge in the court having original jurisdiction over the offense charged."). At the hearing, the defense represented that Thomes has lived in Vermont for eighteen years and worked in a chocolate factory before his arm was injured in an industrial accident. He receives Social Security Disability benefits, has no prior criminal record, lives with his adult daughter in subsidized housing, and resides next door to his adult son. The defense asserted that the incident five days earlier had been the result of defendant missing medication, and his blood sugar becoming irregular. Given these facts, which would suggest that the circumstances driving defendant's conduct on September 5 no longer existed, defendant asked the court to lift the requirement for $10,000 cash bail.

At that hearing, the court, defense attorney, and prosecutor all noted that Thomes had a "remarkable change" in appearance since the arraignment; the court noted that on September 5, the defendant was "not in a position to obey court orders," but on September 10, back on medication, defendant appeared "very calm" and "in control of himself and his faculties." Given this, the State dropped its request for $10,000 cash bail, but asked that "Condition Four" be entered, providing as a condition of release that Thomes be "released into the custody of a responsible adult approved by the court." See id. § 7554(a)(2)(A) (court may order, as condition of release, that defendant be "[p]lace[d] in the custody of a designated person or organization agreeing to supervise him"). The State explained that it wanted someone to make sure that, if released, defendant did report promptly to Northwestern Counseling & Support Services (NCSS) in St. Albans for an evaluation, as well as for any follow-up evaluations or appointments.

---

[1] The court appears to have issued the order for an inpatient forensic evaluation as a condition of bail pursuant to 13 V.S.A. § 7554, with the expectation that defendant would be transferred to the custody of the commissioner of mental health pursuant to 13 V.S.A. 4815(g)(3). We need not explore the interaction between 13 V.S.A. §§ 4814-15 and 13 V.S.A. § 7554 in this case because subsequent events rendered any challenge to the order for an inpatient evaluation moot.

Defendant did not object to the requirement that he promptly report for an evaluation upon his release, but argued that there was no responsible adult to whom he could be released, and that imposing such a condition was thus tantamount to denying bail.[2]

The court reviewed in detail the allegations in the affidavit accompanying the information, including defendant's conduct in wielding a knife threateningly as he approached law enforcement officers. It reviewed the screener's evaluation from September 5, which indicated that defendant was tearful, endorsing suicidal ideation, and stating that he did not want to continue to live in pain. And it noted that, although it had heard argument from counsel, it did not then have before it "an opinion of a medical professional" supporting defense counsel's argument that defendant's behavior on September 5 "was tied to inadequate or maladjusted medication" and thus not likely to repeat. The court explained that it was "concerned that he will continue to be a risk of harm to himself or to others if he does not have a responsible adult who can represent to the court that he is properly receiving his medication."

The court imposed Condition Four, requiring Thomes to be placed in the custody of a responsible adult, and continued the $10,000 bail requirement. The court's findings and explanation if its ruling did not address risk of flight, or suggest a continuing concern about defendant's fleeing. Instead, the court was focused on defendant's risk of harm to self and others. The court left the door open to amended conditions of release, but not until it had additional evidence suggesting changed circumstances relative to his risk of harm to self and others.

On September 12, defendant appealed the amended conditions of release to this Court under 13 V.S.A. § 7556(b).

After defendant's appeal in this Court was filed, and in accordance with the conditions of release, Thomes underwent an inpatient psychiatric examination by Paul G. Cotton, M.D., on September 13. Dr. Cotton's report was filed with the trial court on September 17. At the examination, Dr. Cotton interviewed defendant, reporting in detail his social history, medical history, and other background, and assessing defendant's mental status and competency. The report indicated that the defendant has, for ten years, received services at NCSS, where he has a case worker. Thomes takes several medications but his caseworkers have never recommended or required that he receive inpatient care. Thomes reported "a lengthy, complex medical history," including, since childhood, type 1 diabetes. Dr. Cotton diagnosed the defendant with "depressive disorder due to another medical condition" (diabetes) but found him to be sane, competent, and cooperative, with a "factual" and "rational understanding of legal proceedings." Dr. Cotton's report does not directly address the question of whether defendant poses a risk of harm to the public, and makes no findings on whether the conditions imposed by the court would reasonably assure the defendant's appearance or the protection of the public.

On September 22, the trial court held a renewed hearing on conditions of release. It accepted the report of Dr. Cotton, which was not contested by either party. Defendant proposed to drop Condition Four and replace it with a condition requiring the defendant to voluntarily

---

[2] Defendant's daughter, who lives with him, is eighteen years old.

3

admit himself to inpatient treatment in the event that it was recommended by NCSS treatment providers.[3]  Defendant intended to rely on one of defendant's treatment providers to testify as a witness in the hearing, but the witness was unable to testify because he did not have a signed release in hand authorizing him to talk about defendant.  Thus, the only new evidence introduced at the September 22 hearing was Dr. Cotton's report which, while finding defendant to be competent and sane, did not address the question of whether he poses a risk of harm to the public.

The court rejected defendant's proposal.  The court noted defendant's cooperation with NCSS was positive, but that Condition Four continued to be necessary to provide "additional assurances" and a detailed "safety plan" to ensure that defendant regularly took his medication and that his mental condition does not deteriorate.  The court again left the door open for another review in the future based on the testimony of a professional indicating that defendant was at a reduced risk of harm to himself or others, and denied defendant's request to strike Condition Four or the $10,000 bail condition at that time.  Defendant again appealed to this court on September 23.  We consolidated both appeals.

On appeal, defendant argues that Condition Four and the $10,000 bail condition are not, as required by statute "the least restrictive combination of . . . conditions which will reasonably assure the appearance of [defendant] as required" in court and "reasonably assure protection of the public."  Id. § 7554(a)(1).  See also id. § 7554(a) (presumption that persons charged with an offense shall be released pending trial).

This is not a de novo proceeding on whether to grant bail in this case.  The standard of review, set forth by statute, requires that the trial court decision be affirmed "if it is supported by the proceedings below."  Id. § 7556(b).

The trial court's ruling maintaining Condition Four is supported by the proceedings below.  Given defendant's erratic and dangerous conduct on September 5, the trial court's initial finding in the September 5 hearing that defendant posed a risk of flight was supported by the record.  Given this supported finding, the trial court's imposition of $10,000 bail was not an abuse of discretion at that time.  See 13 V.S.A. § 7554(a)(1)(E) (court may order, as a condition of release that will reasonably assure the appearance of a person as required, that defendant execute a surety bond or deposit cash).

These same factors, as well as the findings of the initial mental-health screen presented on that day, both the subject of findings by the trial court, support the trial court's conclusion on September 10 that that defendant posed a risk of harm to the public, and that a "responsible adult" requirement was the least restrictive means of protecting the public.  The trial court acknowledged the countervailing factors, including that defendant's mental state had apparently stabilized, defendant has a longstanding history of cooperation with NCSS, and defendant agreed to voluntary enter inpatient treatment if it was recommended to him.  But its conclusion that

---

[3] Condition 33 of the September 10 amended conditions of release order already provided that "Defendant will maintain compliance with recommendations of NCSS treatment providers." Defendant does not challenge this condition.

4

releasing defendant without a responsible adult to monitor him would not sufficiently protect the public is within the trial court's discretion, especially given the trial court's expressed willingness to revisit the conditions of release based on new evidence.

Defendant's argument that the condition is tantamount to holding defendant without bail because there is no responsible adult to whose custody he can be released does not change the analysis. A condition is not necessarily improper simply because the defendant is unable to comply with it. See State v. Duff, 151 Vt. 433, 436 (1989) (defendant "need not be capable of meeting bail in order for the amount to be supported by the record"). Insofar as the trial court concluded within its discretion that releasing defendant without a responsible adult would not reasonably protect the public, we cannot conclude that the necessary consequence of his inability to find someone is to set aside the condition.

However, any reliance by the trial court or the state on the protection of the defendant from self-inflicted harm is misplaced. The bail statute only authorizes conditions of release to assure that defendants do not flee or harm the public, and the bail process is not an appropriate substitute for involuntary-treatment proceedings, which are subject to a different statutory scheme with its own (and more stringent) standards and procedural protections. See 18 V.S.A. §§ 7505 (warrant for immediate examination); 7611-7629 (involuntary treatment). This affirmance is based on the conclusion that the proceedings support the trial court's conclusion that Condition Four is reasonably necessary for the protection of the public.

The condition of release requiring the defendant to post $10,000 surety bond or cash is not supported by the proceedings below. The sole constitutionally legitimate purpose of bail is to mitigate the risk of defendant absconding. State v. Brown, 2005 VT 104, ¶ 10, 179 Vt. 22, 26. See also State v. Cyr, 134 Vt. 460, 462 (1976); State v. Pray, 133 Vt. 537, 541-42 (1975) (bail may not be set in order to punish defendant or protect public); State v. Ashley, 161 Vt. 65, 68 (1993). The applicable statute accordingly does not authorize the imposition of a bail condition in the name of public protection. See 13 V.S.A. § 7554(a)(1),(2) (bail listed as a condition available to secure appearance, but not as a measure available to protect the public).

The trial court's findings in connection with its two most recent orders have focused solely on defendant's risk of harm to self and others, only the latter of which is relevant to the conditions-of-release analysis. The trial court did not make express any concerns about defendant's risk of flight in its bail-review order, nor in its subsequent ruling declining to amend the conditions of release. The focus of the last two hearings, in contrast with the initial arraignment, has been solely defendant's risk of harm to himself and others. Likely for this reason, the State expressly dropped its request for bail at the bail review hearing, instead proffering Condition Four as an alternative. Given the current state of the record, there is no "reasonable basis for continuing" the imposition of the $10,000 bail requirement.

Reversed with respect to the $10,000 bail condition and remanded with instructions to strike that condition; affirmed in all other respects.

FOR THE COURT:

_____
Beth Robinson, Associate Justice